* * * * * * * * * * *
The undersigned reviewed the prior Opinion and Award, based upon the record of the proceedings before Deputy Commissioner Gillen. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; and having reviewed the competent evidence of record, the Full Commission affirms the Opinion and Award of Deputy Commissioner Gillen with minor modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All the parties are properly before the Industrial Commission and the Industrial Commission has jurisdiction over the parties and this claim. The parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act. *Page 2 
2. An employee-employer relationship existed between plaintiff and defendant-employer at all relevant times herein.
3. Kemper Insurance Company was the carrier on the risk at the relevant time.
4. Plaintiff's average weekly wage at the relevant time was $551.72.
5. Plaintiff started missing work due to the alleged incident on or about February 21, 2003.
6. The following items were stipulated into evidence:
 a. The Pre-Trial agreement marked as stipulated exhibit 1.
 b. A packet of medical records marked as stipulated exhibit 2.
 c. A packet of plaintiff's paycheck data marked as stipulated exhibit 3.
 d. An audiotape of a recorded statement given by plaintiff marked as stipulated exhibit 4.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff worked for defendant-employer as a selector. Plaintiff's job involved gathering and collecting different fruits and vegetables from the defendant-employer's inventory. This process involved plaintiff loading the selected produce onto moveable carts.
2. On February 21, 2003 plaintiff was loading strawberries from the inventory stock to a moveable cart. The inventory stock was in front of him and the cart was behind him. Plaintiff picked up three boxes of strawberries and turned to place the strawberries onto the cart. During this maneuver plaintiff felt a pop in his right knee and immediate pain. *Page 3 
3. Plaintiff went to the Hart Industrial Clinic on February 21, 2003 and was diagnosed with a right knee sprain/strain. Plaintiff returned to the Hart Industrial Clinic on February 24, 2003 and was diagnosed with a possible lateral meniscus tear. Plaintiff thereafter attended physical therapy at Frye Regional Medical Center on February 25, 2003 and February 27, 2003.
4. On March 3, 2003 the plaintiff was seen by Dr. Carlos de la Garza at Crown Health. Dr. de la Garza was plaintiff's family practitioner. Dr. de la Garza diagnosed a right knee sprain/strain and wrote plaintiff back to work with a 25-pound lifting restriction and a restriction on prolonged standing. Dr. de la Garza continued this diagnosis and these restrictions for 2 subsequent visits on March 10, 2003 and March 17, 2003.
5. Plaintiff saw Dr. H. Grey Winfield at the Hickory Orthopaedic Center beginning on March 19, 2003. Dr. Winfield diagnosed a probable right lateral meniscus tear and suggested an MRI. On April 9, 2003 Dr. Winfield examined plaintiff and was more confident with his right lateral meniscus tear diagnosis. Plaintiff was not interested in undergoing surgery, however, because he continued to improve. Dr. Winfield wrote a note that allowed an increase in plaintiff's work activities.
6. On January 29, 2004 plaintiff returned to Dr. Winfield due to continued tenderness in his right knee. Dr. Winfield did not write plaintiff out of work. On April 5, 2004 Dr. Winfield assigned plaintiff a 10% rating to his right leg but also noted that plaintiff had not reached maximum medical improvement because arthroscopic surgery would, in his opinion, improve the plaintiff's condition.
7. On August 18, 2004 plaintiff returned to Dr. de la Garza. Dr. de la Garza diagnosed a possible meniscus tear, prescribed Vicodin, and wrote plaintiff out of work for 5 *Page 4 
days. Plaintiff followed up with Dr. de la Garza on October 12, 2004. At that time Dr. de la Garza diagnosed a meniscal tear and wrote plaintiff out of work for the following week.
8. Plaintiff testified at the hearing before the deputy commissioner that bending, lifting and squatting were part of his normal job duties. Plaintiff also testified at length about the exact motions that he made at the time of the injury. Chris Edwards, a co-employee of plaintiff, testified that the motions described by plaintiff were not abnormal and furthermore that the selectors completed these exact motions every day as part of their normal job routine.
9. Dr. Allen R. Edwards testified by deposition that there did not appear to be any external or unusual force involved in plaintiff's injury and that the plaintiff was performing "the kind of activity that a selector does a thousand times a day."
10. Dr. de la Garza testified by deposition but was unable to provide insight regarding the mechanism of the plaintiff's injury or about anything unusual or accidental that may have caused the injury.
11. Dr. Winfield testified by deposition that he was familiar with the job of a selector and that lifting cases of product was a normal part of a selector's job routine. Dr. Winfield also testified that a meniscus tear can occur in the absence of trauma.
12. Plaintiff's job duties required him to lift produce and pivot to put the produce onto carts. He used his normal method of turning on February 21, 2003 when he was injured.
13. Although plaintiff sustained an injury arising out of and in the course of his employment on February 21, 2003, this injury was not the result of an accident.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following: *Page 5 
 CONCLUSIONS OF LAW
1. In order for an injury to be compensable under the Workers' Compensation Act, it must be the result of an "accident" as defined in the statute. N.C. Gen. Stat. § 97-2(6).
2. An "accident" must involve more than merely carrying on the usual and customary duties in the usual way, but rather involves the interruption of the work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences. Harding v.Thomas Howard Co., 256 N.C. 427, 124 S.E.2d 109 (1962).
3. Plaintiff did not sustain an injury by accident arising out of and in the course of his employment with defendant-employer on February 21, 2003. N.C. Gen. Stat. § 97-2(6).
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 ORDER
1. This claim must, under the law, be, and hereby is DENIED.
2. Each side shall bear its own costs.
This the 7th day of February, 2006.
 S/_________________________ BUCK LATTIMORE CHAIRMAN
CONCURRING:
 S/_________________________ LAURA KRANIFELD MAVRETIC *Page 6 
COMMISSIONER
DISSENTING WITHOUT WRITTEN OPINION:
 S/_________________________ THOMAS J. BOLCH COMMISSIONER *Page 1